UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA      :
        :
      -v-        :      S3 04 Cr. 230 (SHS)
        :
ROBERTO ORTIZ,        :      OPINION & ORDER
        :
      Defendant.      :
-------------------------------------------------------x
SIDNEY H. STEIN, U.S. District Judge.

      Roberto Ortiz was convicted by a jury two months ago of possession of a firearm after having been convicted of a felony, witness tampering, and evidence tampering. He now moves pursuant to Fed. R. Crim. P. 29 to set aside the convictions for possession of a firearm and for evidence tampering and pursuant to Fed. R. Crim. P. 33 for a new trial. Because the government introduced sufficient evidence at trial to allow a rational finder of fact to conclude beyond a reasonable doubt that Ortiz was guilty of the charges for which he was convicted, and because the interests of justice do not require a new trial, defendant's motion is denied.

## I.    BACKGROUND

      The government charged Ortiz in a five count indictment with conspiring to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951; possession or use of a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c); possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1); witness tampering in violation of 18 U.S.C. § 1512(b)(1); and evidence tampering in violation of 18 U.S.C. § 1512(c).

The government's theory of the case was that Ortiz agreed with David Reyes to rob a drug dealer of narcotics proceeds in the Washington Heights area of Manhattan while posing as police officers. The government sought to prove that on August 21, 2003, Ortiz, Reyes, and a confidential informant – Andy Morel – planned the details of the robbery as they drove around Washington Heights, first in Ortiz's white Lexus, and later in Reyes' black livery cab.

At trial, the government introduced evidence that Ortiz drove to Washington Heights in his white Lexus on August 21 and picked up Reyes and Morel. After parking the Lexus in a garage and switching to Reyes' less conspicuous black livery cab, the three drove around for a time before they were stopped by three New York Police Department detectives, who were acting on a tip from Morel. The detectives removed Ortiz and the others from the car, and during a pat down search of Ortiz, found a loaded firearm in Ortiz's waistband and arrested him. The government relied primarily on alleged co-conspirator David Reyes' testimony to establish the existence of the conspiracy to rob the drug dealer. On the charge of possession of a firearm, the government relied primarily on the testimony of the detectives who arrested Ortiz, and on post-arrest statements made by the defendant to Detective Irvin Noak to the effect that he had received the weapon "from a righteous brother that lives in Brooklyn," (Tr. 495), and on statements Ortiz made to his girlfriend, Jennifer Colon.

The witness and evidence tampering charges stem from Ortiz's attempts - subsequent to his arrest on August 21- to prevent Colon from testifying against him at his trial and to make the white Lexus unavailable for use in the proceedings against him. To prove the witness tampering charge, the government relied primarily on recordings of

Ortiz's conversations with his girlfriend and on her trial testimony. The evidence against the defendant on the evidence tampering charge consisted primarily of calls from the defendant to Colon and others, Colon's trial testimony, and the testimony of Alcohol, Tobacco and Firearms Special Agent Jason Zamaloff regarding his unsuccessful efforts to locate the Lexus.

The evidence showed that on the night of Ortiz's arrest, while still in custody at the precinct, he spoke with Colon and told her that the gun was "a prop for a video." (Tr. 1048). Sometime before trial, Ortiz learned that Colon had repeated that statement to a federal law enforcement officer. (Tr. 1053). In recorded calls to Colon on June 14 and 15, 2004, the defendant confronted Colon about what she had said and told her that she had to leave her home to avoid being called as a witness at his trial. (Tr. 1065-67; Tr. of June 14, 2004, 9:56 p.m. Telephone Call; Tr. of June 15, 2004, 3:28 p.m. Telephone Call, at 1-2). Colon left her home for approximately one month, but remained in contact with Ortiz during that time. (Tr. 1068-69).

The evidence also showed that in late June and early July, 2004, the defendant learned that federal agents were looking for his white Lexus. (Tr. 1072-74). The government produced a flurry of additional recorded calls made by the defendant from the Metropolitan Detention Center and Metropolitan Correction Center, where he was incarcerated pending trial, in which he instructed Colon to arrange to give the Lexus to another person and instructed another person to "take the Lex" and "do whatever you want with the car." (Tr. of June 30, 2004, 7:49 p.m. Telephone Call, at 1). He also instructed another person to tell Colon to "give [another person] my Lex immediately,"

(Tr. of July 1, 2004, 8:24 a.m. Telephone Call), and told Colon that "the most important thing is that he get the car." (Tr. of July 1, 2004, 7:11 p.m. Telephone Call, at 1).

At the close of the trial, the jury acquitted Ortiz of Counts One and Two - the Hobbs Act robbery conspiracy and possession or use of a firearm in furtherance of that conspiracy. The jury convicted Ortiz of Counts Three, Four and Five, thereby finding that he had possessed a firearm after having been convicted of a prior, unrelated felony, that he had corruptly persuaded Colon with the intent to prevent her testimony at his trial, and he had corruptly concealed or attempted to conceal the white Lexus with the intent of making it unavailable for use at an official proceeding against him.

## II.    DISCUSSION

### A.    Rule 29 Motion to Set Aside the Verdict

Defendant seeks a judgment of acquittal on Counts Three – possession of a firearm after having been convicted of a felony – and Five – evidence tampering – pursuant to Fed. R. Crim. P. 29, on the basis of insufficient evidence.  A defendant challenging the sufficiency of the evidence supporting his conviction "'bears a heavy burden.'" United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (quoting United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001)).  Such a motion will be granted only if the district court determines "that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." Id. (citing Fed. R. Crim. P. 29(a), (c); United States v. Reyes, 302 F.3d 48, 52 (2d Cir. 2002)).

In reviewing the sufficiency of the evidence, the court "view[s] the evidence presented in the light most favorable to the government and draw[s] all reasonable

inferences in the government's favor." <u>See</u> <u>United States v. Autuori</u>, 212 F.3d 105, 114 (2d Cir. 2000). The evidence must be considered "'in its totality, not in isolation,'" <u>United States v. Dhinsa</u>, 243 F.3d 635, 648 (2d Cir. 2001) (quoting <u>United States v. Autuori</u>, 212 F.3d 105, 114 (2d Cir. 2000), and the court will "'defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.'" <u>Id.</u> (quoting <u>United States v. Morrison</u>, 153 F.3d 34, 49 (2d Cir. 1998)). The jury verdict must be upheld if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>United States v. Dhinsa</u>, 243 F.3d 635, 648 (2d Cir. 2001) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

1.    **Count Three:  Possession of a Firearm After Having Been Convicted of a Felony**

Ortiz urges that his conviction on the charge of possession of a firearm after having been convicted of a felony cannot stand because the gun found in his waistband and his inculpatory post-arrest statement to Detective Noak should have been suppressed as fruits of an illegal stop. Without that evidence, defendant concludes, no rational juror could have found the essential elements of the charge beyond a reasonable doubt.

Prior to trial, Ortiz moved to suppress evidence of the gun and his post-arrest statement and a factual hearing was held on that motion. Prior to the hearing, the Court granted an <u>ex</u> <u>parte</u> motion by the government to limit the scope of examination at the hearing to preclude questioning regarding the role of the confidential informant - Andy Morel - in the vehicle stop. That ruling was confirmed again during the hearing. After the hearing, this Court denied Ortiz's suppression motion, finding that the government

had presented credible evidence – through the testimony of Detective Noak - that the police had probable cause to believe the vehicle in question had committed a traffic violation, and thus the stop was constitutional. Specifically, the windows of Reyes' black livery cab were tinted more darkly than permitted by the New York Vehicle and Traffic Law.

Ortiz argues that if he had been able to question Detective Noak regarding the confidential informant, the defense would have shown that the Vehicle and Traffic Law violation could not provide the legal basis for the stop because it played no part in Detective Noak's decision to stop the black livery cab. Defendant acknowledges the well-established rule that an automobile stop is reasonable if an officer has probable cause to believe that a traffic violation has occurred, even if the traffic violation is only a pretextual reason for the stop, see Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996), but suggests that this rule does not apply where the traffic violation is asserted as a justification for the stop only ex post facto.

Such a distinction cannot be drawn because the United States Court of Appeals for the Second Circuit has already considered and rejected this proposition. See United States v. Dhinsa, 171 F.3d 721, 725 (2d Cir. 1998) (reversing district court's grant of a suppression motion where "[t]he district court found that Whren and other 'pretext' cases do not apply . . . because the alleged traffic violation had nothing to do with the detectives' decision to stop [defendant]"); see also United States v. Harrell, 268 F.3d 141, 148-49 (2d Cir. 2001). Here, as in Dhinsa, the fact that the detectives' "decision to stop the defendant had nothing to do with their observation of the traffic violation," see id. (citing Dhinsa, 171 F.3d at 725), is irrelevant because "an observed traffic violation

legitimates a stop even if the detectives do not rely on the traffic violation." <u>Dhinsa</u>, 171 F.3d at 725.  Because defendant does not challenge the Court's finding that there was a reasonable basis for the detectives to believe that the windows of the black cab were tinted in violation of the New York Vehicle and Traffic Law, and defendant raises no other challenges to the sufficiency of the evidence on the charge of possession of a firearm after having been convicted of a felony, his motion for acquittal on Count Three must be denied.

### 2.     Count Five:  Evidence Tampering

Defendant claims that that there was insufficient evidence supporting the conviction on Count Five, charging him with evidence tampering in violation of 18 U.S.C. § 1512(c)(1), which makes it a crime to:

> corruptly alter[], destroy[], mutilate[], or conceal[] a record, document, or other object, or attempt[] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding

18 U.S.C. § 1512(c)(1).  For purposes of section 1512, an "official proceeding" includes "a proceeding before a judge or court of the United States . . . or a Federal grand jury." 18 U.S.C. § 1515(a)(1)(A).

Ortiz contends principally that there was insufficient evidence to establish that he acted with the requisite specific intent to make the Lexus unavailable for use in an official proceeding.  Essentially, he argues that because the government failed to produce evidence showing that he had knowledge that his actions in relation to the Lexus were "likely to affect" the trial on the other charges in the indictment, the government necessarily failed to prove the requisite specific intent beyond a reasonable doubt.

Section 1512(c) was recently enacted by Congress as part of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204 § 1102, 116 Stat 745, 807 (2002), and there is as of now no authoritative decision construing that section. Utilizing relevant Supreme Court and Second Circuit authority, this Court concludes that to sustain a conviction under section 1512(c)(1), the government need not prove that the defendant's conduct is "likely to affect" the official proceeding or that the defendant have knowledge that his conduct is "likely to affect" the official proceeding.

The "likely to affect" requirement that Ortiz urges be grafted onto the intent element of section 1512(c)(1), is derived from the United States Supreme Court's decision in United States v. Aguilar, 515 U.S. 593, 115 S. Ct. 2357, 132 L. Ed. 2d 520 (1995), where it held that in order to prove a violation of the omnibus provision in the obstruction of justice statute, 18 U.S.C. § 1503, the government must show a nexus between the defendant's actions and the official proceeding, by showing that the defendant's conduct would have the "natural and probable effect of interfering with the due administration of justice." Aguilar, 515 U.S. at 599 (citations omitted). Thus, the Supreme Court concluded, "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." Id.

However, in construing other, similar provisions of section 1512, making it a crime to tamper with a potential witness, the Second Circuit has rejected attempts by defendants to engraft the "likely to affect" nexus requirement onto those provisions. See United States v. Gabriel, 125 F.3d 89 (2d Cir. 1997); United States v. Romero, 54 F.3d 56 (2d Cir. 1995).

In Gabriel, the defendant – who was convicted of corruptly persuading or misleading a potential witness with the intent of influencing that person's potential testimony before a grand jury – contended that because the potential witness was in Australia and beyond the grand jury's subpoena power, his actions could not have been likely to affect the grand jury proceeding, and his conviction must be overturned. Gabriel, 125 F.3d at 102. The Second Circuit disagreed, holding that the "likely to affect" requirement should not be engrafted onto section 1512. Id. at 105.

The Second Circuit had previously rejected a similar argument in Romero, where the defendant had been convicted of killing a potential witness in violation of 18 U.S.C. § 1512(a)(1)(C). In Romero, the Second Circuit held that to sustain a conviction under section 1512(a)(1)(C), which makes it a crime to kill a person "with intent to – prevent the communication by any person to a law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense," the government need not prove that the victim "'was willing to cooperate or that an investigation was underway.'" Gabriel, 125 F.3d at 103 (quoting Romero, 54 F.3d at 62). It was sufficient that the defendant killed the individual "with the intent to frustrate the individual's possible cooperation with federal authorities." Romero, 54 F.3d at 62 (emphasis added).

The court's reasoning in Gabriel applies equally to section 1512(c)(1). In refusing to apply the Aguilar nexus requirement to section 1512(b), Gabriel noted that the Supreme Court in Aguilar was concerned that the language of the omnibus provision of section 1503 - which makes it a crime to "corruptly . . . endeavor[] to influence, obstruct, or impede, the due administration of justice," 18 U.S.C. § 1503 - was so vague as to not provide sufficient notice of what conduct was criminal. See Gabriel, 125 F.3d at 104

(citing Aguilar, 515 U.S. at 599-600). However, in contrast to section 1503, "section 1512(b) uses language that provides fair notice to the world of what line cannot be crossed." Id. at 104. Gabriel noted that both sections 1512(b)(1) and 1512(a)(1)(C) – the provision at issue in Romero - "make it illegal to engage in certain conduct (corruptly persuading/misleading or killing) with an intent to achieve a specified result (influencing testimony in an official proceeding or preventing the communication of crimes to federal authorities)." Gabriel, 125 F.3d at 103. Likewise, section 1512(c)(1) - at issue here - makes it illegal for a person to engage in the certain conduct of corruptly altering, destroying, mutilating or concealing a record, document, or other object, or attempting to do so, with an intent to achieve the specified result of impairing the object's integrity or availability for use in an official proceeding. See 18 U.S.C. § 1512(c)(1).

The Gabriel court further explained that application of the Aguilar nexus requirement to section 1512(b) would be inconsistent with the language of section 1512(e)(1) – equally applicable to section 1512(c)(1) – which "specifically provides that 'an official proceeding need not be pending or about to be instituted at the time of the offense.'" Id. at 104 (citing 18 U.S.C. § 1512(e)(1)). Thus, Gabriel concluded that to sustain a conviction under section 1512(b), "the government was not required to prove that [the potential witness] was likely to testify or that [defendant's] actions were likely to affect [the potential witness's] testimony." Id. In light of Gabriel, this Court concludes that the government need not prove that a defendant's conduct is "likely to affect" the official proceeding, or correspondingly, that the defendant have knowledge that his conduct is "likely to affect" the official proceeding, in order to sustain a conviction under 18 U.S.C. § 1512(c)(1).

This case arguably differs from Gabriel to the extent that Ortiz claims that the reason the government failed to demonstrate that he knew his actions were "likely to affect" the official proceedings was because there was a paucity of evidence showing the connection between the Lexus and the other crimes charged in the indictment, whereas in Gabriel, there was no question but that the testimony of the potential witness would have been relevant to the crimes under investigation by the grand jury. See Gabriel, 125 F.3d at 105. To the extent defendant's argument is read as suggesting that the government must prove that the object successfully concealed by the defendant would have constituted or contained relevant or material evidence, it is rejected.

The text of 18 U.S.C. § 1512 contains no requirement that the government prove that the "record, document, or other object" that is corruptly altered, destroyed, mutilated, or concealed by the defendant constituted or contained relevant or material evidence pertaining to the crimes being investigated or tried at the official proceeding. See 18 U.S.C. § 1512. Ortiz has demonstrated no reason why this Court should add such a requirement onto a statute where one does not exist, see United States v. Wells, 519 U.S. 482, 490-91 (1997) (refusing to graft a materiality requirement onto a federal false statement statute where none was included in the statutory text), and in fact he insists that he is not urging the Court to do so. Indeed, as the government argues, such a requirement would be contrary to common sense and sound public policy, in that it would reward a defendant for successfully destroying potential evidence.

In short, to sustain the conviction under section 1512(c)(1), the government must prove two elements: (1) that the defendant corruptly concealed, or attempted to conceal the Lexus, and (2) that he did so with the specific intent of making the Lexus unavailable

for use at an official proceeding.  See 18 U.S.C. § 1512(c)(1).  The evidence at trial was sufficient to enable a reasonable person to conclude that each of these elements had been proven beyond a reasonable doubt.

The jury was entitled to consider evidence that Ortiz was trying to divest himself of the Lexus.   In a telephone conversation between Ortiz and Colon that was played for the jury, Ortiz said to Colon, "What's going on?  Let me ask you a question.  When they asked you about the car, what did you tell them?" (Tr. of July 1, 2004, 7:11 p.m. Telephone Call, at 1).  After Colon answered, "I told them I got it," (Id.), Ortiz responded "Oh, my God.  Why you do that?"  (Id.).  Ortiz then instructed Colon to give the Lexus to another person, telling her that "the most important thing is that he get the car."  (Id.).

Contrary to defendant's contention that there was no evidence presented at trial that defendant knew the government was looking for the Lexus, a rational juror could also conclude, beyond a reasonable doubt, based on that same conversation between Ortiz and Colon, that Ortiz knew that a federal agent was looking for his Lexus.  Ortiz asked what Colon had responded "[w]hen they asked you about the car," and she responded that "I told them I got it."  (Tr. of July 1, 2004, 7:11 p.m. Telephone Call, at 1) (emphasis added).  She testified at trial that when she referred to "them," she was referring to a federal agent. (Tr. 1079).  It certainly was reasonable for the jury to conclude that Ortiz was also referring to a federal agent when he referred to "them" as well.

A rational juror could also conclude, based on the audio recordings and on Reyes's testimony, that Ortiz believed the Lexus might be used as evidence against him, and that in instructing Colon to get rid of the Lexus, he did so with the intent that it not be available for use at the official proceeding against him.  David Reyes, who was in the

Lexus with Ortiz, testified that Ortiz drove the Lexus to Washington Heights on the night of the arrest,[1] and that as they exited the Lexus, he saw Ortiz reach into the glove compartment and then fix his waistband, (Tr. 678), and the detectives testified that later that night they found a firearm in Ortiz's waistband. (Tr. 296, 481).

It is true that the jury might have inferred – based on the limited amount of evidence presented at trial connecting the Lexus to the other crimes charged – that Ortiz intended only to divest himself of the Lexus without any specific intent of making the Lexus unavailable for use at an official proceeding. Cf. Gabriel, 125 F.3d at 105, n. 13 ("the jury also reasonably could have concluded that [the defendant's] sole intent was to interfere with the FBI investigation, and if the jury had so concluded, it would have been compelled to find [the defendant] innocent."). However, particularly in light of the audio recordings of Ortiz's conversations in which he instructed Colon to get rid of the Lexus immediately after learning that a federal agent was looking for it, a rational juror was able to conclude beyond a reasonable doubt that Ortiz attempted to conceal the Lexus with the intent of making it unavailable for the official proceeding.

Finally, Ortiz also contends that the audio recordings were improperly admitted because the government failed to establish the threshold relevance of the evidence as required by Fed. R. Evid. 104(b). However, because the government was not required to prove that the defendant's obstructive conduct was "likely to affect" the trial on the

---

[1] Ortiz wants the Court not to consider evidence presented by the government in its attempt to prove the existence of the Hobbs Act robbery conspiracy or possession of a firearm in relation to that conspiracy – evidence which was presented primarily through the testimony of Reyes. However, the Court cannot conclude that by acquitting defendant on Counts One and Two for which Reyes's testimony was the bulk of the evidence, that the jury rejected the entirety of Reyes's testimony. A jury may believe some parts of a witness' testimony while disbelieving others. See United States v. Garcia Duarte, 718 F.2d 42, 48 (2nd Cir. 1983) (Where the credibility of a witness is challenged, the finder of fact is "entitled to reject his testimony, in whole or in part").

related charges, the relevancy of the audio recordings of Ortiz's conversations with Colon and others regarding the white Lexus did not depend upon a showing that the Lexus constituted or contained evidence that would have been admissible as evidence on the other charges in the indictment, and thus Fed. R. Evid. 104(b) was no bar to their admission as evidence on Count Five.

Accordingly, defendant's motion for acquittal on the charge of evidence tampering must be denied.

**B.      Rule 33 Motion for a New Trial**

Ortiz also moves for a new trial pursuant to Fed. R. Crim. P. 33.   A court may grant a defendant's request for a new trial "if the interests of justice so require."  Fed. R. Crim. P. 33.  However, the court's authority to grant a new trial must be exercised "'sparingly' and only in 'the most extraordinary circumstances.'"  <u>United States v. Ferguson</u>, 246 F.3d 129, 134 (2d Cir. 2001) (quoting <u>United States v. Sanchez</u>, 969 F.2d 1409, 1414 (2d Cir. 1992)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be manifest injustice." <u>Id.</u> at 134 (citing <u>Sanchez</u>, 969 F.2d at 1414).

Ortiz's motion for a new trial is premised on several allegations, including: (1) the government committed multiple violations of <u>Brady</u>, <u>Giglio</u>, Fed. R. Crim. P. 16, and the Jencks Act, 18 U.S.C. § 3500; (2) the government intimidated a potential defense witness; (3) the defense was not afforded adequate time to prepare; and (3) the Court improperly denied most of Ortiz's multiple requests for adjournments.  Ortiz argues that the failure of the Court to grant an adjournment – compounded by the government's

failures to disclose information and defendant's prior counsel's ineffectiveness – resulted in his trial counsel being unable to provide effective assistance of counsel. Ortiz further contends that the failure of the government to turn over materials and the failure of the Court to grant requested adjournments violated his right to a fair trial and right to present a defense. Finally, Ortiz contends that the cumulative effect of the alleged errors resulted in a denial of his right to due process.

### 1. The Government's Disclosure Obligations

Ortiz urges that the government's failure to timely disclose exculpatory and impeachment material warrants a new trial. Defendant claims that the following constituted Brady or Giglio material which the government either failed to disclose or failed to disclose in a timely manner: (1) the government's ex parte letter submitted to the Court in connection with the factual hearing on the suppression motion, (2) discrepancies between statements of Morel and Reyes regarding the events of August 21, 2003, (3) phone records detailing communications between Reyes and Morel, (4) records pertaining to Agent Zamaloff's investigation, and (5) Morel's confidential informant file. He also claims that the government violated Fed. R. Crim. P. 16 by failing to promptly disclose audio recordings of telephone calls made by the defendant to Colon and others while he was incarcerated pending trial – recordings which he was in fact given prior to trial.

Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) requires the government to disclose evidence that is favorable to the accused and material either to guilt or punishment. See United States v. Jackson, 345 F.3d 59, 70 (2d Cir. 2003) (citing Brady, 373 U.S. at 87, 83 S. Ct. 1194). "Favorable evidence includes not only evidence

that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." United States v. Coppa (In re United States), 267 F.3d 132, 139 (2d Cir. 2001) (citing Giglio v. United States, 405 U.S. 150, 153-55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972)).  Because the purpose of Brady is to protect the defendant's fair trial right, "a Brady violation occurs only where the government suppresses evidence that 'could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

The short answer to defendant's litany of allegedly withheld documents is that the documents either did not exist – and therefore could not have been turned over – or they were in fact turned over to the defense.  Moreover, assuming only for purposes of argument that all of the above materials constituted Brady or Giglio material, a new trial is not warranted because defendant has not established prejudice resulting from any of the alleged failures. See e.g., In re United States, 267 F.3d at 142; United States v. Adeniji, 31 F.3d 58, 64 -65 (2d Cir. 1994); United States v. Sanchez, 912 F.2d 18, 21 (2d Cir. 1990).

Defendant explains in detail only his claim of prejudice resulting from the government's alleged failure to timely disclose Morel's confidential informant file.  That file was turned over in its entirety only after the government had rested its case.  Ortiz argues that the documents in the confidential informant's file could have been used to impeach Noak's testimony on the basis of the lack of information in the file had the defense had them during the presentation of the government's case to the jury.  On cross-examination, Detective Noak had testified that it was regular NYPD practice to record the

information provided by a confidential informant in the confidential informant's file. (Tr. 529-30). Because no such information was included in the file on Morel, Ortiz argues that he could have impeached Noak on the basis that either he failed to follow procedure, or that the forms existed but were being withheld from the defense.

Brady does require the government to disclose impeachment evidence, meaning evidence "having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998). However, because defendant has not established that there is a reasonable likelihood that disclosure of the evidence would have affected the outcome of the case, there is no Brady violation. See United States v. Bagley, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985).

While the defendant may have been able to further question Noak regarding his failure to record communications between himself and Morel had the file been in his possession during cross-examination, the defendant did question Noak extensively regarding both his obligation to record such communications, (Tr. 529-30), and the fact that the only written documentation of the events of August 21, 2003 was in a form he completed, known as a "DD-5." (Tr. 532). Moreover, the defendant had a full opportunity, explicitly brought to its attention by the Court, to call Noak as its own witness to further question him based on the information – or lack thereof – in the file. Thus, defendant cannot demonstrate "a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." See In re United States, 267 F.3d at 142.

Defendant also argues that the confidential informant's file constituted Jencks Act material, and the government's failure to disclose it in time for use on cross-examination of Noak during the presentation of the government's case warrants a new trial. The Court considered and rejected this argument during trial, and restates its reasons here only briefly. The file consisted of forms reflecting the registration of Morel as a confidential informant, namely, copies of computer printouts of a background check, signature cards, background and identifying information, and a printout showing payments to the informant. This information was only incidentally related to the subject matter of Noak's direct testimony. While Noak had signed some of the documents, none contained any narrative statements. Thus, the forms are most appropriately characterized as administrative forms, which are not subject to disclosure under 18 U.S.C. § 3500. See United States v. Paternina-Vergara, 749 F.2d 993, 996 (2d Cir. 1984); United States v. Augello, 451 F.2d 1167, 1170 (2d Cir. 1971); Smith v. United States, 416 F.2d 1255, 1256 (2d Cir. 1969).

Finally, even if the file – or certain documents within it – did constitute Jencks Act material, the Court finds no basis for concluding that the government deliberately suppressed the file, and defendant cannot demonstrate that "'there is a significant chance'" – or any chance – "'that this added item, developed by skilled counsel, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction.'" United States v. Jackson, 345 F.3d 59, 77 (2d Cir. 2003) (quoting United States v. Gonzalez, 110 F.3d 936, 943 (2d Cir. 1997)).

In sum, a new trial is not warranted on the basis of any of the alleged violations of the government's disclosure obligations.

## 2.    Alleged Prosecutorial Intimidation of a Potential Defense Witness

Ortiz contends that a new trial is warranted on the basis of the government's alleged intimidation of potential defense witness Elizabeth Natal.  Defendant made an offer of proof that Natal would have testified as follows:  that she asked Ortiz for permission to use the white Lexus and register it in her name in the summer of 2004 and that she picked up the car from the parking lot where it had been parked by Colon.  However, after a series of mechanical troubles with the car, she decided it was too much trouble to maintain and told Ortiz that she did not want it.  Ortiz then had someone else pick up the car from Natal.  (Tr. 1367-68).

According to Ortiz, Natal's testimony would have created a reasonable doubt regarding Ortiz's intent behind his efforts to rid himself of the Lexus, and also would have thrown doubt on whether he was attempting to conceal it at all.  Moreover, Ortiz asserts that the government issued a subpoena for Natal and intimidated her by informing her attorney that she "was in danger of being prosecuted for evidence tampering because of her involvement with" the Lexus.  (Tr. 1369).

Courts have recognized that "judicial or prosecutorial intimidation that dissuades a potential defense witness from testifying for the defense can, under certain circumstances, violate the defendant's right to present a defense."  United States v. Williams, 205 F.3d 23, 29 (2d Cir. 2000).  In this Circuit, in order to establish a violation of the right to present a defense, the defendant must show not only "that he was deprived of material and exculpatory evidence that could not be reasonably obtained by other means," but also must demonstrate "bad faith on the part of the government."  Id. To prove a violation of his right to due process, the defendant "'must demonstrate that the

absence of fundamental fairness infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'" Id. (quoting Buie v. Sullivan, 923 F.2d 10, 11 (2d Cir. 1990)).

The government had a good faith reason to believe Natal might have relevant information regarding Ortiz's efforts to conceal the white Lexus - she possessed it during part of the relevant period – and the timing of their subpoena to her does not establish that their decision to issue it was in bad faith. Moreover, the fact that the government informed Natal's attorney of the potential for criminal liability serves to "dispel[] the clouds of suspicion that the government agents intended to intimidate [the potential defense witness]." Williams, 205 F.3d at 32. Because the Court finds that the government's actions regarding Natal were not in bad faith, it finds no violation of Ortiz's right to present a defense.

### 3.    Requests for Adjournments

Ortiz has not demonstrated that the Court's denial of many, but not all, of his multiple requests for adjournments prejudiced his right to a fair trial, made it impossible for his counsel to provide constitutionally effective assistance of counsel, or deprived Ortiz of the right to present a defense. "A district court has broad discretion to grant or deny a motion for a continuance." United States v. Cusack, 229 F.3d 344, 349 (2d Cir. 2000) (citing United States v. Pascarella, 84 F.3d 61, 68 (2d Cir. 1996)). "To demonstrate an abuse of this discretion, a defendant must demonstrate arbitrary action that substantially impaired the defense." United States v. Beverly, 5 F.3d 633, 641 (2d Cir. 1993). Defendant has failed to demonstrate either that the Court's actions were

arbitrary or that he was substantially impaired by the Court's denials of his requests for adjournments.

Ortiz claims that he received constitutionally ineffective assistance of counsel due to the combined effects of the government's alleged violations of its Brady, Giglio and Jencks Act obligations, the Court's refusal to grant requested adjournments, and his prior counsel's ineffectiveness. A defendant challenging a conviction on the basis of ineffective assistance of counsel must establish both ineffectiveness and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

Defendant claims that prejudice resulted because his defense counsel was unable to adequately prepare and present a theory of the defense that Morel was not a legitimate confidential informant, that in fact, Detective Noak was a "rogue cop" and he, Morel, and Reyes were involved in a "rogue operation" to set up Ortiz for the criminal charges. Defendant argues that he could have supported this defense if he had had the confidential informant file during the government's case, along with the testimony of an Assistant District Attorney who would have testified that the first time in his long career that an NYPD officer had refused to disclose the identity of a confidential informant was when he asked Detective Noak to disclose identifying information regarding his confidential informant in this case. However, as the Court ruled during trial, development of this line of questioning would have produced testimony of at best, minimal probative value, and that minimal probative value was substantially outweighed by the danger of jury confusion and unfair prejudice, and it was therefore inadmissible pursuant to Fed. R. Evid. 403. Because this line of testimony - for which Ortiz claimed he needed more time

to prepare - was inadmissible, he can claim no prejudice resulting from the Court's refusal to grant further adjournments.

Moreover, because Ortiz has failed to demonstrate either that his counsel was ineffective in any manner, or that he suffered prejudice from that ineffectiveness, a new trial is not warranted. The Court has considered the remainder of the defendant's Rule 33 arguments, and finds them to be without merit.

## III.    CONCLUSION

Because the government introduced sufficient evidence at trial to allow a rational finder of fact to conclude beyond a reasonable doubt that Ortiz was guilty of the conduct charged in Counts Three, Four and Five of the indictment, and because the interest of justice does not require a new trial, defendant's motion for a verdict of acquittal or for a new trial is denied.

Dated: New York, New York
       April 20, 2005

                    SO ORDERED:

                    Sidney H. Stein, U.S.D.J.